

IT IS SO ORDERED.
Signed September 9, 2013

Arthur S. Weissbrodt
U.S. Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re <br> PAUL DUNCAN GILLESPIE, <br> Debtor. | Case No. 09-55224-ASW <br> Chapter 7 |
| RAYMOND A. BECHTOLD, <br> Plaintiff, <br> v. <br> PAUL D. GILLESPIE and CAROL WU, Chapter 7 Trustee, <br> Defendants. | Adv. Pro. No. 09-5208-ASW |

**MEMORANDUM DECISION AND ORDER ON RAYMOND A. BECHTOLD'S MOTION AND RENEWED MOTION TO GRANT PLAINTIFF LEAVE TO PURSUE JUDGMENT REMEDIES**

This matter is before the Court on the Motion and Renewed Motion of Plaintiff Raymond A. Bechtold ("Bechtold") to Allow Plaintiff to Enforce State Court Judgment, and for Determination That Doing So Will Not Violate Bankruptcy Court Orders (the "Motion"). Bechtold is represented by attorney Marc L. Shea and Defendant Paul Gillespie ("Gillespie") is represented by attorney Wayne Silver.

The Court has considered the papers filed in support and opposition to the Motion and the arguments of the parties. For the reasons set forth below, the Motion is denied.

**I. FACTS**

Gillespie filed a voluntary chapter 7 petition on June 30, 2009. On the same date, Gillespie also filed a chapter 7 case for his wholly-owned corporation, Dymatix, Inc. (Case No. 09-55233).

Bechtold moved for relief from the automatic stay in both cases, seeking to pursue a pending state court action – <u>Raymond Bechtold v. Paul D. Gillespie, et al.</u>, Santa Clara County Superior Court Case No. 1-08-CV-119735 (the "State Court Litigation") – which sought, among other things, the return of certain collateral – the Trigon collateral and the Giga-tronics collateral (collectively, "Collateral") – which Bechtold claimed that Gillespie/Dymatix were wrongfully withholding. The State Court Litigation also included cross-claims by Gillespie and Dymatix against Bechtold and others under several theories, including conversion, breach of contract, and interference with contractual relations.

On August 14, 2009, prior to the hearing on Bechtold's relief from stay motion, Bechtold commenced an adversary proceeding (Adv. Pro. No. 09-5208) seeking a determination that Gillespie's debts pertaining to the Collateral were not dischargeable under 11 U.S.C. §§ 523(a)(2) and (4), and requesting turnover of the Collateral. In Bechtold's Third Amended Complaint filed on February 4, 2010, the nondischargeability claims were dropped. Bechtold also filed an adversary proceeding against Dymatix on January 21, 2010 (Adv.

Pro. No. 09-5212), seeking turnover of the Collateral. That adversary proceeding was dismissed on September 30, 2011.

On October 16, 2009, the chapter 7 trustee, Carol Wu, noticed a compromise and sale under which Bechtold would pay $14,000 (to be split between the Gillespie and Dymatix estates) in exchange for the trustee's rights to the Collateral and a release of all the trustee's defenses and cross-complaints in the State Court Litigation, and entry of a stipulated judgment in the two adversary proceedings declaring Bechtold the owner of the property affected by the two actions. Specifically, Bechtold would receive:

> 1) the Trustee's right, title and interest in shares and/or ownership interests in any entity Gillespie and/or Dymatix have an interest in, including but not limited to Dymatix, Inc., Sesa, Inc., Sesa Group, Inc. Fastspares, Inc. and American Tech Manufacturing, Inc., and any residual interest that may exist in the Gigatronic and/or Trigon Collateral; 2) release of all the Trustee's defenses and cross-complaints against Bechthold in the Superior Court action pending between Bechtold, Gillespie and Dymatix, in Santa Clara, Case No. 108CV119735 (the "State Court Action"); and 3) entry of a stipulated judgment in the Gillespie Action and the Dymatix Action declaring that the property affected by the two actions is the property of Bechtold . . . .

Trustee's Notice of Compromise filed October 16, 2009 (docket no. 48).

Gillespie objected to the compromise and sale, and offered an overbid of $32,000 to purchase the assets. The Court approved the sale to Gillespie by order entered February 22, 2010 ("February 22, 2010 Order"). The February 22, 2010 Order reserved the trustee's and Gillespie's respective rights <u>vis a vis</u> Gillespie's amended claim of exemption in the proceeds of the compromise and sale. The trustee and Gillespie later entered into a settlement under which Gillespie would be entitled to $15,411 of any funds coming into the

Gillespie or Dymatix bankruptcy estates (Docket no. 103, entered January 20, 2011).

The motion for relief from stay filed July 31, 2009 came off calendar during September 2009, and Bechtold filed a new motion for relief from stay on February 18, 2010. By order entered May 17, 2010 ("May 17, 2010 Order"), the Court granted limited relief from stay for Bechtold to pursue the State Court Litigation. The May 17, 2010 Order did not permit enforcement of any judgment against Gillespie or Dymatix or pursuit of any damages for pre-petition events. The order stayed the two adversary proceedings filed by Bechtold against Gillespie and Dymatix (09-5208 and 09-5212).

Gillespie was granted a discharge on May 10, 2010. The bankruptcy case was closed on April 30, 2013.

On March 21, 2011, the state court entered judgment declaring Bechtold the owner of the Collateral, awarding damages of $25,000 for failure to return the Collateral since July 1, 2009, and ordering defendants to turn over the Collateral to Bechtold ("Judgment"). The Judgment also awarded Bechtold costs of suit, including attorneys' fees pursuant to an attorneys' fee provision in the contract between the parties. The Judgment ordered that Gillespie and Dymatix would take nothing by way of their cross-complaint. The defendants in the State Court Litigation appealed the Judgment.[1]

After entry of the Judgment, Bechtold moved to dismiss adversary proceeding nos. 09-5208 and 09-5212, and sought leave to pursue Bechtold's remedies awarded in the Judgment. On October 3,

---

[1] According to the California Court of Appeals website, as of September 9, 2013 the appeal has been fully briefed and is awaiting scheduling of oral argument.

2011, this Court entered an order dismissing the adversary complaints and counterclaims ("October 3, 2011 Order"). The October 3, 2011 Order provided that the automatic stay in both the Gillespie bankruptcy and the Dymatix bankruptcy did not apply to Bechtold's rights to enforce any non-monetary relief awarded by the state court judgment. The October 3, 2011 Order set for further hearing the instant motion by Bechtold to pursue costs and attorneys' fees awarded in the state court judgment, and to consider whether that pursuit is barred by the discharge entered in the Gillespie bankruptcy case.

The parties submitted supplemental briefing, and the Court held further hearings.

**II. ISSUES**

1. Whether Bechtold's enforcement of the state court award of post-petition attorneys' fees is prohibited by the discharge injunction entered in Gillespie's chapter 7 case on May 10, 2010.

2. Whether the $25,000 damage award was obtained in violation of the automatic stay.

3. Whether the bankruptcy court may award fees incurred in the adversary proceeding.

**III. ANALYSIS**

1. <u>Enforcement of post-petition attorneys' fee award</u>

Bechtold seeks leave to pursue enforcement of the attorneys' fees and costs awarded by the state court. The award includes only fees and costs incurred post-petition – on and after July 1, 2009.

The issue before the Court is whether those fees were discharged by Gillespie's discharge order of May 20, 2010.

Whether those fees and costs were discharged turns on whether the claim for attorneys' fees was a contingent claim as of the petition date. See, e.g., Siegel v. Federal Home Loan Mortgage Corp., 143 F.3d 525, 532 (9th Cir. 1998). Where the possibility of a claim against the debtor is fixed and out of debtor's hands prior to the bankruptcy filing, that claim is discharged in the bankruptcy. Id. at 533. However, where a debtor has been released from liability on a contract and – post-petition – voluntarily "returns to the fray" to use the contract as a weapon, the discharge does not insulate the debtor from the risks of his or her post-bankruptcy acts. See id.; In re Ybarra, 424 F.3d 1018, 1026 (9th Cir. 2005).

When the Court initially considered this issue, the Court tentatively ruled that the attorneys' fees were not discharged in Gillespie's chapter 7 because Gillespie had taken affirmative steps to "return to the fray" to litigate the state court claims with Bechtold, including Gillespie's cross-claims against Bechtold. However, the Court has carefully reviewed the cases and the record in this matter, and concludes that the Court's tentative decision was not correct. It is a difficult issue, and one of first impression under this unique context. However, the parties have not cited, and the Court has not found, any cases directly on point. For the reasons set forth below, the Court concludes that the post-petition attorneys'fees and costs were discharged.

In Ybarra, debtor Nancy Ybarra was the plaintiff in a pre-petition lawsuit against her employer, Rockwell, and asserted two

causes of action – employment discrimination and violation of the covenant of good faith and fair dealing. Ybarra filed a chapter 11 bankruptcy case and failed to disclose the lawsuit. Rockwell discovered Ybarra's chapter 11 bankruptcy case over a year later, objected to Ybarra's chapter 11 disclosure statement, and moved to convert Ybarra's bankruptcy case to chapter 7. The bankruptcy court granted Rockwell's motion to convert.

The chapter 7 trustee of Ybarra's bankruptcy case agreed to settle the litigation against Rockwell for $17,500. Ybarra objected to the compromise; the compromise was approved over Ybarra's objections. Thereafter, the state court granted Rockwell's motion to dismiss the state court litigation. Prior to dismissal of the state court litigation, Ybarra amended her bankruptcy schedules to exempt the lawsuit. The bankruptcy court sustained Rockwell's objection to Ybarra's claim of exemption. That ruling was appealed to the BAP, which reversed the bankruptcy court. The United States Court of Appeals for the Ninth Circuit affirmed the BAP.

On remand, the bankruptcy court ruled that Ybarra's pre-petition litigation against Rockwell was exempt and gave Ybarra the option of either accepting the $17,500 in full satisfaction and release of all claims against Rockwell or taking ownership of "all right, title and interest" in the lawsuit against Rockwell. Ybarra elected to take ownership of the cause of action and thereafter successfully persuaded the state court to set aside the dismissal. The state court ultimately granted summary judgment in favor of Rockwell. Rockwell moved for an award of attorneys' fees and costs. Because Ybarra had been granted a discharge prior to the

award of attorneys' fees, Rockwell moved the bankruptcy court for leave to enforce the state court award of attorneys' fees and costs. The bankruptcy court granted the motion in part and held that Rockwell could enforce the portion of the award incurred post-petition without violating the discharge injunction.

Ybarra appealed the bankruptcy court's decision to the BAP, which held that the entire amount of Rockwell's attorneys' fees and costs was discharged. The Ninth Circuit reversed the BAP and held that the post-petition attorneys' fees and costs were not discharged in Ybarra's bankruptcy case. In so holding, the Ninth Circuit stated:

> [C]laims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily "return[s] to the fray." See Siegel, 143 F.3d at 533-34. Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends upon whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses.
>
> In this case, after petitioning for bankruptcy, Ybarra petitioned the bankruptcy court to exempt the state suit against Rockwell, and then appealed the bankruptcy court's denial of this exemption to the BAP and to this court. On remand, Ybarra chose to pursue the state case rather than accepting Rockwell's $17,500 settlement offer. Ybarra actively persuaded the state court to set aside the dismissal. We concluded that by affirmatively reviving the state suit, Ybarra "returned to the fray." Thus, under Siegel, Rockwell's claim for attorney fees and costs incurred post-petition was not discharged in bankruptcy.

Ybarra, 424 F.3d at 1026-27.

Gillespie asserts that this case is distinguishable from Ybarra. This Court agrees. The primary difference is that Gillespie was the defendant – not the plaintiff – in the State Court Litigation. The Court has found no cases following Siegel or

Ybarra in which the debtor was the defendant. Still, Gillespie sought affirmative relief in the form of cross-claims against Bechtold and others.

There is no question that Gillespie took affirmative post-petition action to continue the litigation. Gillespie overbid Bechtold to purchase the estate's rights to the Collateral and a release of all the estate's defenses and cross-complaints in the State Court Litigation. What distinguishes this case from Ybarra, however, is that, had Gillespie acquiesced in the trustee's compromise with Bechtold, Gillespie would have been left with a judgment declaring that the Collateral belonged to Bechtold, and nothing else. Gillespie's only option to defend against such a judgment was to purchase the estate assets himself. According to Gillespie's papers, Gillespie offered to purchase the assets to prevent the entry of a judgment forfeiting Gillespie's rights to these assets and the loss of Gillespie's defenses to Bechtold's claims. Thus, Gillespie's decision to pursue the State Court Litigation was not entirely voluntary. Although the trustee later agreed to pay Gillespie $15,411 of Gillespie's amended claim of exemption in the proceeds of the State Court Litigation, when the trustee noticed the compromise and sale, Gillespie faced the loss of his defenses in the State Court Litigation with no compensation whatsoever. This is unlike the Debtor in Ybarra, who turned down a $17,500 settlement to continue litigating a lawsuit that she had initiated.

The relevant inquiry is whether Gillespie's actions were such that he should be found to have voluntarily borne the risk of incurring attorneys' fees in pursuing the litigation. Gillespie's

status as a defendant in the State Court Litigation casts a different light on his conduct. The litigation was initiated by Bechtold, who assumed the risk of being held liable for attorneys' fees in the litigation. Under the circumstances, Gillespie's choice to defend that litigation should not shift the risk back to Gillespie.

For these reasons, the Court finds that the attorneys' fees and costs awarded by the state court were effectively discharged in Gillespie's chapter 7 bankruptcy, and the award is therefore unenforceable.

### 2. Damage Award

Gillespie also seeks leave to pursue the state court's $25,000 award of damages. Whether the Court should grant this relief depends upon whether the damages awarded by the state court arose pre-petition, whether this Court authorized Bechtold to seek damages in the state court, and whether the award of damages which Bechtold obtained violated the discharge injunction. These issues overlap, because the discharge injunction would have discharged any pre-petition damages.

Debtor was granted a discharge in the Chapter 7 case on May 20, 2010. Pursuant to 11 U.S.C. § 727(b), the discharge had the effect of discharging "the debtor from all debts that arose before the date of the order for relief" – in other words, debts which arose before the petition date of June 30, 2009. The term "debt" is defined in the Bankruptcy Code to include "liability on a claim." 11 U.S.C. § 101(12). The term "claim" includes the right to payment – whether or not the right "is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5).

For bankruptcy purposes, it is federal law – not state law – that determines when a claim arises. In re Hassanally, 208 B.R. 46, 50 (9th Cir. BAP 1997). In this context, Congress gave the broadest possible definition to the term "claim" in order to further the policy of promoting a debtor's fresh start. Id. Thus, for bankruptcy purposes, a claim does not arise when the state law cause of action accrues under state law. Id. Instead, a court applies a so-called "fair contemplation analysis," looking at when the debtor's alleged wrongful conduct first occurred and determining what relationship the claimant had to the debtor and the debtor's conduct when the conduct occurred. Id. at 53. Even a contingent claim which may never mature into an actual claim will arise pre-petition if the wrongful conduct occurred pre-petition and the claimant had some relationship to the debtor and the debtor's conduct at that time. Id. For instance, the Ninth Circuit BAP held that a claimant's claim for negligent construction arose pre-petition when it was the debtor's pre-petition conduct which created a construction defect, even though the claim remained contingent at that time and had not accrued under state law. Id. at 55.

The claim here is Gillespie's alleged conversion of the Trigon collateral. Bechtold asks the Court to draw a distinction between Gillespie's conversion of the property which occurred pre-petition and Gillespie's continuing conversion of the property which occurred post-petition, and insists that the damages which occurred

post-petition are somehow separable from those which occurred pre-petition. Within the context of this case, and in light of the Judgment entered by the state court, the Court disagrees.

In California, a claim for conversion consists of the intentional exercise of dominion or control over property of another which so seriously interferes with the other person's right of possession that the converting party may be required to pay the full value of the property – measured as of the time of conversion. See <u>Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.</u>, 95 Cal. App. 4th 1273, 1281 (2002); see also Cal. Civ. Code § 3336.[2] Put another way, when a party converts personal property of another, California law allows a court to order the party who wrongfully retained possession to buy the property. As alternative relief, a claimant may seek the return of the property in lieu of damages. See Cal. Civ. Pro. § 667 ("judgment for the plaintiff may be for the possession or the value thereof" and in some instances, "damages for the detention"). However, damages for an alleged conversion are measured as of the time the conversion begins.

The parties agree that Gillespie's retention of the Trigon collateral began in 2008. According to Bechtold's reply brief, Bechtold believes that the Trigon collateral was worth $40,000 when Gillespie first retained possession of the Trigon collateral. However, because Bechtold asked the state court to limit damages to post-petition damages, the state court found that Bechtold's damages caused by the post-petition retention and failure to turn

---

[2]That statute provides that the detriment caused by wrongful conversion is the value of the property at the time of conversion, plus compensation for time and money expended in pursuit of the property.

over the Trigon collateral were in the amount of $25,000 – both on, and after, July 1, 2009. This finding by the state court judge shows that these damages were for the value of the Trigon collateral after the filing of the petition – there is nothing to indicate that Bechtold sought any other type of damages on the conversion claim. However, the Judgment does not change the date when the conversion began. Because the conversion began prior to the petition, the claim therefore arose prior to the petition, and was discharged.

With regard to the Court's order granting relief from stay, the Court authorized Bechtold to pursue the State Court Litigation in order to establish Bechtold's rights with respect to the Trigon collateral, but never expressly authorized Bechtold to seek an award of damages for Gillespie's alleged conversion of the collateral. To the contrary, this Court forbade Bechtold from pursuing Debtor "for damages for pre-petition events." The pre-petition event, here, was the conversion. At most, Bechtold could have obtained an order entitling Bechtold to turnover of the Trigon collateral, but Bechtold opted for an award of damages, which was not permitted by the order modifying the stay.

Consequently, the discharge entered in the chapter 7 case effectively discharged Gillespie from monetary liability on the conversion claim. This means that the Judgment awarding Bechtold $25,000 for the conversion is void. See In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).

//
//
//

**3. Fees Incurred in Prosecuting the Adversary Proceeding**

The parties disagree as to whether the state court had jurisdiction to award Bechtold $134,573 in attorneys' fees incurred between July 1, 2009 and January 25, 2011, where a portion of the fees was incurred in prosecuting this adversary proceeding. Gillespie argues that the state court lacked jurisdiction to award attorneys' fees incurred by Bechtold in the adversary proceeding, and that the bankruptcy court has exclusive jurisdiction over such an award of fees pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6). However, because the Court finds that the attorneys' fees at issue were discharged, the Court need not reach this issue.

Gillespie also argues that he is entitled to his fees as the prevailing party in the nondischargeability proceeding because those claims were abandoned by Bechtold. Even if the state court lacked jurisdiction to determine the entitlement to fees incurred in the adversary proceeding, this Court would not award fees to Gillespie because he was not the prevailing party under California law.

There is "no general right to receive attorneys' fees . . . under the Bankruptcy Code." In re Dinan, 448 B.R. 775, 784 (9th Cir. BAP 2011). Any attorneys' fee award would have to be based on contract and/or state law. See In re Carey, 446 B.R. 384, 390 (9th Cir. BAP 2011). In Carey, the BAP relied on the Supreme Court's opinion in Travelers Cas. & Sur. Co. Of Am. V. Pacific Gas & Elec. Co., 549 U.S. 443 (2007), for the proposition that a claim for attorneys' fees in bankruptcy "generally is recognized as governed by state law," and that "this is particularly true in exception to discharge cases, such as the adversary proceeding, where the

litigation ordinarily has no direct impact on the bankruptcy estate."

Under California law, a prevailing party is generally defined as "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." Cal. Civ. P. Code § 1032. However, in other situations not specified, it is the Court's role to determine, in its discretion, whether a party is a prevailing party. Id.

Determining whether Gillespie was the prevailing party under § 1032 requires the Court to consider the claims that were asserted in this adversary proceeding and how those claims were resolved. The Third Amended Complaint -- which abandoned any nondischargeability claims -- sought declaratory relief, injunctive relief, and a turnover order with respect to the missing Trigon Collateral and Giga-Tronics Collateral. No damages were sought in the Third Amended Complaint. Because the claims in the Third Amended Complaint were equitable, such that no monetary relief was sought, the Court cannot use relative monetary recovery (or lack thereof) in assessing who was the prevailing party.

Ultimately, the Court dismissed these claims, but the issue of who was the rightful possessor of the collateral was actually litigated in the State Court Litigation. On that issue, it was Bechtold who was determined to be the rightful possessor of the collateral. Thus, although the claims in the adversary proceeding were dismissed, Gillespie did not prevail on the claims in a true sense. Gillespie has not cited any authority for the argument that

Bechtold's abandonment of the nondischargeability claims renders Gillespie the prevailing party. See Cal. Civ. P. Code § 1032 (which does not address abandonment of claims in defining who is a prevailing party). Even if those claims were considered separately, Gillespie does not meet any definition of prevailing party set forth in Cal. Civ. P. Code § 1032.

The Court cannot view this adversary proceeding in a vacuum or disregard the determination on the merits which the state court reached. At the end of the day, neither side prevailed. While Bechtold won in state court, the award was discharged in bankruptcy.

There is another source for an award of attorneys' fees under state law which the Court has not yet addressed. In an action on a contract, "the party prevailing on the contract shall be the party who recovered the greater relief in the action on the contract." Cal. Civ. Code § 1717. Further, when (as here) an attorneys' fee provision in a contract provides that the party who prevails on the contract claim shall recover its attorneys' fees, only that party may recover its fees, even if the other party obtains greater relief under a noncontractual cause of action. Maynard v. BTI Group, Inc., 216 Cal. App. 4th 984, 990 (2013).

There were two attorneys' fee provisions at issue in this litigation. First, the Asset Purchase Agreement between Giga-Tronics Inc. and Gillespie provides: "Should any action be taken by any party to enforce the terms of this Agreement, whether through litigation or arbitration, the prevailing party shall be entitled to reasonable attorneys' and expert's fees and costs." As discussed above, Gillespie was not the prevailing party in this

adversary proceeding; therefore, no fees are due to Gillespie under the Asset Purchase Agreement.

Second, the promissory note in which Gillespie promised to make payments to Giga-Tronics provides that if Giga-Tronics were to engage an attorney "to enforce or defend any provision of this Promissory Note or any related credit or security agreement, whether or not as a consequence of any default or event of default, with or without the filing of any legal action, proceeding or appeal, or appearance in any bankruptcy proceeding," then Gillespie is required to pay attorneys' fees incurred by Giga-Tronics. Interestingly, this provision does not award fees to a prevailing party, but instead is a one-sided provision making fees awardable only to Giga-Tronics. Assuming the provision is enforceable and could be made bi-lateral, the Court would award fees to neither side under its terms.

Contractual attorney's fees should be awarded solely to the extent that they were incurred in litigating state law contract issues. Ford v. Baroff (In re Baroff), 105 F.3d 439, 442-43 (9th Cir. 1997) (fees could be awarded because it was necessary to apply state contract law in a nondischargeability proceeding); American Express Travel Related Services Co., Inc. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1127 (9th Cir. 1996) (fees could be awarded because the issue of contractual breach was litigated). As discussed above, this Court did not reach the merits of the contractual claims in this adversary proceeding. Therefore, Gillespie is not entitled to an award of contractual fees.

## IV. CONCLUSION

The Court finds that the attorneys' fees awarded by the State Court were discharged in Gillespie's chapter 7 bankruptcy, and the $25,000 in damages awarded by the state court were awarded in violation of the automatic stay. Therefore, Bechtold's motion to grant leave to pursue his judgment remedies is DENIED. The Court need not reach the issue of the state court's jurisdiction to award attorneys' fees in the nondischargeability action because those fees were discharged, and Gillespie was not the prevailing party in the lawsuit.

IT IS SO ORDERED.

**\*\*\* END OF ORDER \*\*\***

**Court Service List**

All recipients are ECF participants